Good morning, Your Honors. May it please the Court, my name is Christopher M. Alston. I'm here on behalf of the appellant, known as the lender in this matter. I would like to reserve three minutes for rebuttal. This appeal involves whether debtors, in this case the Blendheims, who file what's known as a simultaneous Chapter 20 case, where the second 13 case was filed to stop a lender's foreclosure that was authorized when the stay was lifted in the prior and pending 7 case, may nonetheless confirm a Chapter 13 plan that permanently voids lender's lien, even though the debtors are ineligible for a discharge. Let me ask you this. I think we, this is a difficult case and I assure you we're, I can't speak for others, but I know that we all read everything before we come here. I have a first question about whether the fact that your claim was disallowed effectively waived for lack of diligence in defending it. Does that mean that your lien and the underlying debt are unenforceable in underlying bankruptcy, in an under, under non-bankruptcy law too? In other words, if we were to rule for you, wouldn't your lien still be unenforceable in a non-bankruptcy law proceeding due to your waiver in this one? I'm kind of getting to you. Do you have a legally cognizable claim? I understand the question and that is answered in part by 1325 and 5, excuse me, 348, which says if the case is converted back to Chapter 7, all liens that existed at the time of the case would basically come back in to play unless they were paid in full. You don't give credit to what happened during the bankruptcy case. You're not answering Judge Callahan's question. Well, the answer is no, it doesn't matter. We have a claim under non-bankruptcy law. Well, wait a minute. Well, here, there was an adversary proceeding, correct? Correct. First, the claim was disallowed. Then there was an adversary proceeding to avoid the lien. That's correct. Right? That's correct. Okay. And then there was the plan. Correct. Ultimately approved. Right? Correct. Now, let's assume that they satisfy all the requirements of the plan. Right. They make all the plan payments. All the plan payments. And you're telling, and it's not converted to a Chapter 7, nor is it dismissed, you're saying that you could take that lien and go to state court and initiate a foreclosure proceeding? Well, if the case is not dismissed or converted, no, we can't do that. If the case is dismissed or converted, we can, is what we're saying. We're saying that under letter... But if it proceeds the way that it is, because it went from Chapter 7, then it went to 13, and then we used Chapter 20, as far as that goes... Right. And my understanding is then they still have to pay, and they don't get to discharge the debt, but it's a five-year plan at this point? Correct. Correct. So if they make all the payments, then what can you do? Well, no payments came to the lender. The payments were made, they're basically paid attorney's fees and to the condo association. So my client was not receiving any payments. He's not received any payments since 2006. No, and when they go under the 13... Yes. And they're making payments, and that lasts for five years, right? Right. And at the end of it, they can't discharge the debt, but can you, if they make all the payments, can you foreclose against them? Not where we are today, because the bankruptcy court allowed them the order to say that upon completion of the plan payments, this lien will be permanently avoided. That's where we believe the error was made, because Levitt says a case either ends in discharge, conversion, or dismissal. If the case is converted or dismissed, all liens that were avoided during the case spring back into life, and the lender in our case could then foreclose instead. I think the question is, it springs back into life, but what do you have that's living if you sat on your rights for a year and a half and didn't press the lien? Well, the rights we have are still based upon the deed of trust. Except for what you didn't respond to there. You were a party, and they were a party, and it was that it was a fraudulent document and a fraudulent signature, and you never responded to that. So what can you... It would seem that could be binding against you. Well, but there was no finding. The claim was just merely disallowed on a motion. There was no finding of any fraud. Those were merely allegations. But you defaulted, right? It was disallowed. It was disallowed, but the claim was already discharged. The claim itself was already discharged in the Chapter 7. All secured claims... Not the lien, though. Not the lien. The lien was not... The bank could still go after the property. Correct. Under non-bankruptcy law, the bank could still go after the property, but for then the Chapter 13... Let me ask you, is there any significance to the fact that there was an... that the bankruptcy court disallowed the lien in an adversary proceeding? Is there any significance to that by itself? Well, it is, yes. It is significant because that's the only way it can be done. It has to be done by an adversary proceeding. Bankruptcy rules say that. The problem is, and this goes to our... So just because the claim was disallowed... Yes. That wasn't enough. That was not enough. They had to initiate an adversary proceeding. An adversary proceeding. That's correct. And in that adversary proceeding, what was that? I mean, you couldn't really have no... You really had no role in it. Yes. There was nothing for the lender to argue because the plaintiff... Right. The claim had been disallowed. ...had just handed over the order disallowing the claim and said, grant me summary judgment. The problem, and this comes to our due process concerns, is that the motion which avoided... which disallowed the claim made the lien avoidance a fait accompli based upon... Well, I mean, that I don't... Way things happen, unfortunately. Well... No, what I'm concerned about, is there any significance to the fact that there's almost like a judgment in the adversary proceeding? Well, that is the judgment that says our lien will be permanently voided upon completion. And that is... And the bankruptcy judge just took that language and put it into the plan. Effectively, that's correct. The final order approving the plan mirrored the summary judgment order. And I think that was the proper procedure, that it couldn't provide it in the plan unless there was an order from an adversary proceeding avoiding our lien. And so it was significant in that regard. The problem that we see, and the error was, having that language saying that the lien will be voided upon plan completion, when plan completion is not an option under Levitt. The courts that have interpreted the new bankruptcy code, Section 1328F, which was designed to curb Chapter 13 filings. Some courts, like Okasisi, a bankruptcy court, has said, well, that actually now means Levitt is incomplete, and that the rights of Chapter 13 debtors have been somehow expanded to give them a fourth option. You now, under Okasisi, have conversion, dismissal... But the quote-unquote Chapter 20 scenario is still viable after the change to the bankruptcy law, right? That is correct. It was an outlaw. Chapter 13 was not... What they did was consistent with the bankruptcy law. Well, I would say... You can claim that it was bad faith, but the district court here didn't find bad faith. What it found was that what they did was not precluded by the Bankruptcy Act. And I think that's correct. What they did is not precluded by... So then what do they get at the end? Well, what they get at the... Under Chapter 13? Well, the point is that's the whole idea. When Congress enacted Section 1328F, it didn't say Chapter 20s are banned, but it was designed to discourage Chapter 20s by prohibiting... But that's exactly what that... I know because both of you are sort of asking us to interpret the Bankruptcy Act in the way that is consistent with your position. But at the time that the Bankruptcy Act was passed, prior to that, there was what? Is it the Johnson case? Correct. And they didn't specifically overrule it, so we have to assume it's still good law. That's correct. Because they know how to do that when they... I mean, because Congress... It's not a constitutional case. They could have overruled it. So from your perspective, what is the purpose of a Chapter 20 case if the Bankruptcy Act didn't overrule them? And so is... You know, that... It seems... That's what I want to know. What's the purpose? If your argument appears to be that Chapter 20 cases are still permissible, it follows that there must mean... There must be means of permanently stripping loans. Otherwise, what's the point of a Chapter 20 case? Well, the point of a Chapter 20 case would be to... Well, first of all, there is still some protections a Chapter 20 debtor can receive, primarily the automatic stay. Everything's on hold for five years. And everything else is on hold for five years. But what Leavitt would say and what we are arguing is that at the end of that five years, you would return back to where you started. And, in fact, unsecured creditors are. To the extent there are unsecured creditors, they are returned back to the beginning of the case because their claims aren't discharged. But secured creditors get treated worse. So if we decide the case the way you want it decided, are we creating a split in the circuit? I believe so. The Fourth Circuit and the Eleventh Circuit have ruled the other way. The Fourth Circuit was a 2-1 decision. The other two circuits... Were those cases, were there cert petitions filed in those cases? I'm not aware of that. But isn't your case different, though, because your claim was disallowed? There is some factual differences, but ultimately from a legal standpoint... These cases seem to arise where the second loan is worthless, where the second lien is completely worthless. That's correct. We would say that distinction doesn't... The bankruptcy judge said, your claim is disallowed and you guys didn't do anything. Well, the reason nothing was done for a period of time is because the lender believed the ultimate validity of the lien had to be determined in an adversary proceeding, not by a motion. But at some point, didn't the bankruptcy judge say, hey, look, you guys, they moved for summary judgment or something? They moved for summary judgment. And then he said... You didn't respond. No, no, in summary judgment, there was a response. And then what the bankruptcy judge said was, I can't make a ruling until the claim disallowance order is final. And under bankruptcy law, it's not final until there's a final... Couldn't there be an inference from this, the fact that you refused to weigh in, that you couldn't prove the signatures to be... I mean, they were claiming they were fraudulent. But that was never litigated. There was no order. Remember... But you just completely... If you made a tactical decision to do nothing, that's what the allegations against you were. Well, the... Let them lie. The other allegations were there wasn't sufficient evidence to support the claim. And the order disallowing the claim just merely said, claim is disallowed, there's been no opposition. So there were no findings that... So you're saying this was a strategic decision, not an incompetent decision? I'm not saying that. I mean, you took a little bit of a default judgment here is what you took. Well, there was a... You didn't admit the allegations. You didn't admit that the signature was a forgery. But you did take the default on it by not responding. Correct. There was a default order on the motion. In the adversary proceeding, it was heavily litigated and argued, no, we want to litigate the validity of our lien here. But the judge said, no, the claim is disallowed. It does seem a little odd that your client wouldn't have said anything on a $400,000 lien. In the record, it says the former counsel did not inform the creditor of the objection. So I think that probably answers the question. I want to get back to Judge Callahan. I believe you asked the question, you know, what does this matter now? What do you have with the Chapter 20 if what we're saying is correct? Our point is that Chapter 20s were supposed to be discouraged by 1328F. Right, but, okay, they're supposed to be discouraged, but some survived. So in the ones that survived, what is the purpose? It is to, in some cases, give the debtor breathing room for five years. And for five years, they get an automatic stay, they make plan payments, and then at the end, they don't get a discharge, so the case needs to be dismissed, liens come back into place. But that certainly makes sense because that's what Levitt says. Cases either end in discharge, dismissal, or defer. And if during that five-year period they don't make any payments on the loan, what they face as soon as that five-year period ends? That's correct. Notice default and notice of intent to sale. That is correct. But that is, if you don't read 1328F that way, then what does it mean? Because if unsecured debts are the only ones that are prevented from discharge, what does that mean? There rarely is unsecured debt in a Chapter 20. You go right from a seven where all the debts, including the notes, have been discharged, and you move right into a 13, there is really no unsecured debt. So if your client had properly answered everything previously in the seven, would we be here? In the 13? Well, because in the seven proceeding. Well, in the seven we obtained relief from the stay and started the foreclosure process. And the day the debtor received a discharge, two days later was the scheduled foreclosure sale. The 13 was filed while the seven was still pending. And it is our view that 1328F would be meaningless if liens can be permanently avoided but unsecured debt can't be because there's really unsecured debt in the Chapter 20. There's really nothing there. So what did Congress mean by putting in 1328F? It must have meant something, and it was trying to actually answer Johnson. But I thought, you know, I'm going to show a little bit of my ignorance about Chapter 13 and Chapter 7, but I thought in Chapter 13 if there is unsecured debt, the bankruptcy court has to, the plan has to cover that in some way, either specifically say no payments are required or $10 a month or. You are correct. That is what happens in a Chapter 13. But when you've got a situation in Chapter 20 where if there is unsecured debt at the end of the day, it's not going to be discharged. So, yes, the debtor, Chapter 20 debtor is going to be putting plan payments in. But regardless of how much they put in, if there's still unsecured debt at the end of the day, because of 1328F, the Blend Times wouldn't be able to discharge those claims. So those unsecured creditors would still be able to pursue them at the end of the case. But secured liens, like my clients who got avoided, are now unable to pursue their liens at the end of the case. So unsecured creditors are returned to a better position than secured creditors, and as the dissent in the Davis case said, that turns bankruptcy code practice really on its head. I mean, if your claim had not been disallowed, I think the case would be harder. I can't pinpoint it, and maybe it's because I don't have that depth of day-to-day knowledge, working knowledge of bankruptcy law, but it seems to me it's pretty significant here that we're dealing with a disallowed claim. Well, if I could answer that, it seems that there really is no difference between that and a junior lien that is underwater or there is no equity to support it. That's an allowed claim. Well, no, it becomes disallowed. It ends up becoming a disallowed claim because there is no equity to support the claim, so therefore it gets treated the exact same way. That seems different to me from here, where you filed an affirmative document asserting your rights. You filed a claim, and then that claim was disallowed. So in the unsecured, in the undervalued second liens, it may well be, I think in most of these cases, it is the case that the claim is filed. It's just that the value of the estate is such that there's no value to the second lien. And while I know on face it seems like it should be different, it seems like the lender really did something wrong or something that's right. I'm not even saying that. Because, I mean, there seems to be some significance to the fact that there was a claim filed and it was disallowed. I mean, the code talks about allowed claims. Right. But 348, so 349 says any claims that were disallowed are put back on, excuse me, any liens that are avoided under 506D come back into play upon dismissal. And under 348, it says the same thing. Well, and that's what we're saying is that under Levitt and under. . . There was no conversion. But that's what we're saying. At the end of this case, it should be dismissed. It shouldn't be that you can merely complete your payments, administratively close the case and permanently. . . Well, let me ask you that. I know you're reading Levitt and I'm not sure. Are there any pre-bankruptcy act cases that held that a Chapter 13 plan cannot conclude to plan completion? I understand your position to be that the Ninth Circuit stated as much, essentially, through silence in Levitt. But I want to know if there is a court that specifically stated this proposition. Other than the Levitt. . . Well, but that kind of is one of those things where you're saying it essentially stated it. But did anyone really say it? Well, did anyone go into in-depth analysis and analyze the code and say that that's how it ends? I'm not aware of a case, certainly from this circuit, that that's the case. Okay. Okay. Well, I'll give you a minute for rebuttal. All right. Thank you. Almost a minute and a half. All right. Thank you. Good morning, Your Honors. May it please the Court. Good morning. Taryn Darling-Hill on behalf of the Blend Times. Your Honors, just to address a few of the questions that you raised. Maybe you can start with. Does a lender have a legally cognizable right that would be enforceable under non-bankruptcy law given that the lender's claim was disallowed for lack of diligence? No, Your Honor. It does not. Given the process that the case is at now, the Blend Times have completed plan payments, have committed to their confirmed bankruptcy plan, and the lender's lien per the terms of the plan has been avoided upon plan completion. To be a little bit more clear, opposing counsel did move for a stay of plan completion pending the Ninth Circuit's ruling. But as things stand today, the claim should be avoided. Moving to the second issue, Judge Paez, you raised a question about whether the adversary was relevant. And one fact I want to bring to the Court's attention is, yes, the adversary was relevant. The lien avoidance couldn't take place but for the adversary action under 5060. We have Doosnip, the Supreme Court, saying only can a debtor use 5060 where the claim has been disallowed. Importantly, in this case, the Blend Times filed the adversary, and the lender still did not move to vacate that prior order for 11 months after the adversary was filed. So the order in the adversary proceeding, does that convey rights independent of the Chapter 13? No, Your Honor. It only is effective upon plan completion. I see. So if the Blend Times had not completed plan payments, which many debtors in a Chapter 13 are unable to do so, if they hadn't made those commitments for five years, if they hadn't gotten a confirmed plan, which requires compliance with all of the Bankruptcy Code's requirements that it's in a best efforts plan, that it's in the best interest of the creditors, if they hadn't committed to that and completed that, all of this would have been for naught. The lender's lien would have been reinvigorated. So at the end of plan completion, all the payments are made and everything is done according to plan. In the normal, in the usual case, what happens? In the usual Chapter 13. In a typical, you know, we don't have this kind of situation. So in a usual Chapter 13, the trustee makes a report that everything has been completed and a discharge is granted. So here they can't do that here because there was a prior 7. That's right. So what happens administratively in cases all around the Ninth Circuit, hundreds in the Western District of Washington, is that a notation is made to the case by the Chapter 13 trustee that this case does not receive a discharge and will administratively complete. The trustee collects the money that's being paid on a monthly basis, distributes it to the creditors, and then when all is completed, makes a report that the case can now administratively close. And it is this right that is the holy grail. It's been called the holy grail for debtors. There's nothing in the code, though, that says the case should be administratively closed, right? No, there isn't, Your Honor. And there's nothing in the code that says the case must require discharge. So why couldn't the trustee come in and say dismiss it? The trustee could. And, in fact, in this case, the creditor and the trustee both made efforts to dismiss this case before it was confirmed. It was hotly contested, as I'm sure the record has revealed to you. Yes. But we withstood because the debtors had complied with all the requirements in the code. But say the practical effect of where the Blenheims are now, what benefit has emerged to them? Their house appeared to be kind of underwater in the Chapter 7. So they got rid of a lot of debt in the Chapter 7. So I'm assuming then they were in a better position to, what, either get a modification or to make payments. So what benefit? Tell me exactly what they're getting. If we give you what you want, what's the stat? They got to stay in their house for five years. All right? What do they owe in their house now? Well, certainly, Your Honor. So the exact way it will exist, if you give us what we're requesting, and if you affirm the bankruptcy court, is that the debtors have avoided their first-position mortgage. Their second-position mortgage, which is $90,000-plus, is reinstated because it's no longer wholly unsecured. So that will ride through, and they will either have to pay that, or that lender can move to foreclose. They haven't made any payments during this time. They haven't made any payments on that second lien. They have not, Your Honor. And they're not required to because that lender actually didn't appear in the bankruptcy court. Could they have sold the house during this five-year period? They could not, Your Honor. They could not have. The liens ride through until plan completion, and as there's a stay right now. They've offered to sell the house and then pay off the second lien? Pay it off in full? Not as things stand today because of the first-position lender, Your Honor, because they have stayed plan completion. Well, if they did that during the plan, could they have requested permission to sell the house with the intention of paying off the second lien? I suppose if the lender had not appealed, they could have, certainly. But they would have had to pay that second lien. If they had done that and then completed the plan, and then once they exited the plan, they wouldn't have had a house. So the first-position lien would have now been unsecured. If the first-position lien holder's lien was not avoided, I'm sorry, disallowed, Your Honor. And that is actually, Judge Paez, you raised that question earlier, and perhaps this will explain a little bit better. With the second wholly unsecured lenders, their claims are, in fact, allowed, but they are deemed unsecured. So they have to be treated as an unsecured creditor in the Chapter 13 bankruptcy, and they have to be paid something. The difference in this case is this lender's claim was disallowed in its entirety. That goes to Judge Paez's question, but I want to go back to something that Mr. Alston had a long colloquy with the Court about. And that is that the secured lender in this case seems to be in worse position at the end of the case than unsecured creditors. Can you address that? And that is an interesting question, and courts have likened this. Other courts, your sister circuits who have found that this is permissible, have likened this to comparing apples to oranges. Now, a Chapter 7 bankruptcy or a discharge, answering all of your questions as to what a discharge gets you, a discharge affects in personam debt, the right to collect from the debtors. A discharge does not affect the in rem debt, the right for the creditors to go after the collateral. In this case, and in any case, once a discharge takes place, the in rem rights ride through. A secured creditor is benefited to a certain extent because it retains that in rem right no matter what. Unless, under Operation of the Chapter 13 Code, the debtors have availed themselves of their permissible remedies of lien avoidance. And lien avoidance does treat a secured creditor differently than an unsecured creditor, and they're entitled to avoid that. So if you read the Bankruptcy Act, what's the best reason we should read Congress' silence in the Bankruptcy Act to support your claim, particularly given that the purpose of the act was to increase protections for lenders and curb serial bankruptcy filings? I guess in resolving, if resolving this case requires us to understand the backdrop that Congress enacted the Bankruptcy Act against, and are there any pre-bankruptcy act decisions recognizing that a Chapter 13 case can conclude upon planned completion? Well, I'll take that answer. I know, it's kind of a whole bunch of questions, I guess, but I'm trying to understand. It was just like, what's the purpose of a Chapter 20? You know, tell me what, you know, if you could have a Chapter 20 and then the Bankruptcy Act was passed. So I'm telling you, give me your best shot here, because the Bankruptcy Act seems to want to prevent what you're doing. Well, I think, actually, you answered it, Your Honor. The Bankruptcy, BAPSIPA 2005 was intended. So is that how you say it, BAPSIPA? BAPSIPA or BAPSIPA. Okay. BAPSIPA was intended to curb particular abuses and particular successive filings or repeat filings. So Congress intentionally intended to hinder certain remedies and provisions in the Code and did so expressly. So I think what we take from that is if Congress intended to hinder the 506 lien avoidance, right, it had every ability to do so. In fact, that was its entire purpose of amending the Bankruptcy Code, but it did not amend 506. Notably, it did not amend 109, the eligibility requirements. Well, we also assume that Congress really knows that they're acting with all this information in their head, which both of you are asking us to say by their silence to go your way, and he's saying by their silence to go his way. That's true, but Congress made significant amendments to the Bankruptcy Code in 2005 in various code provisions. It added 1328. It required that debtors take additional consumer credit counseling classes before they file a bankruptcy and after. It overhauled the income requirements and the planned payment requirements. It made comprehensive changes to the Bankruptcy Code. It did not, however, change 506, didn't make any amendments there, nor did it amend the eligibility requirements. If it wanted to prohibit Chapter 20 debtors from filing bankruptcy and amend Johnson, then it would have said under 109, debtors who have filed a 7 and received a discharge are not eligible to file a subsequent 13. It didn't do that. So until Congress does tell us otherwise, we can't read further into its intentions. And I would answer, Your Honor, the second question you asked is what cases before BAF-CIPA give us any instruction, and I think you cited it, Johnson is directly on point. Johnson says there's nothing Congress has done to foreclose the ability that debtors should have to take advantage of the tools available to them in the Chapter 13 despite having received a Chapter 7 discharge. So if the appellant wants us to create a split in the circuit and go away from where the 4th and the 11th are going, what interest would the Supreme Court have in this since it's really, it's, you know, Congress can say if we, if none of us get what, right, what Congress was saying, they can say it. Well, but the Supreme Court does seem to like bankruptcy cases a little bit. Certainly as of late, Your Honor. Yeah. But. Are you concerned with the authority of bankruptcy judges? Oh, they are, they have been concerned with the authority of bankruptcy judges. But I think along those same lines, they have to be concerned with the authority they might have. And they're not going to read into the code where Congress hasn't clearly amended. I think what the Supreme Court would do is say if Congress wants to amend this to prohibit Chapter 20 filings, it needs to say so expressly. If it wants to provide something other than a limitation on discharge, it needs to do that. And if I may talk to Your Honors about what I think that discharge requirement that was amended in 2005 did, I'm happy to do that. I think that discharge amendment in 1328, what it did is it said Chapter 13 debtors who are filing a subsequent bankruptcy after receiving a Chapter 7 are not entitled to discharge additional debt they've incurred. And this is a practical issue, maybe not in this case because they did file soon after the Chapter 7 discharge, but many debtors incur additional debt after they file the Chapter 7 bankruptcy. They run up additional credit cards. They get loans from family members, loan from banks. And what Congress told us is they don't get another clean slate after discharging in a Chapter 7. They don't get to walk away from another $30,000 worth of unsecured debt. Enough's enough. They're on the hook for that. But they can reorganize and use the tools provided them in the Chapter 13 to simplify their debt and cure their debt. Finally, there's one other issue I want to bring up for the Court. By affirming, you are affirming business as usual in the Ninth Circuit. What's happening is there are cases going on, really these cases where they're wholly unsecured second lien creditors. It seems to be where it's usually. Really, I don't think the Court is likely to ever see facts like this again, where a first position mortgage has been avoided on the basis that the lender's dilatory conduct continued for an 18-month period. But what is happening is debtors are staying in their homes. They're avoiding second wholly unsecured mortgages, creditors who wouldn't receive a penny outside of bankruptcy anyway. They're converting them to allowed unsecured claims, and those creditors are receiving money in some cases on those claims. Meanwhile, first position lien creditors are getting their payments on a monthly basis. So those cases are really working to the benefit of both creditors and debtors. And by affirming, you're allowing those cases to continue. Can I ask you, I don't want, this isn't the hardest part of it, but it's a little bit odd here. This attorney's fees situation here, it appears that it wasn't, I don't know, what are we supposed to do about that? Because the district court said no, right? And said, hey, you're getting a good enough, Blenheims, you're getting a good enough deal here now, just don't, you know, write me a thank you note, don't be asking for attorney's fees here. But they really go back to, but then what's the bankruptcy still going on? So what? I think you're right, Your Honor. I think the district court made a results-oriented decision with regard to the fees. I think the district court looked at it and said, yeah, and I think the court wrote it goes too far to also give the Blenheims their fees. But I think that was an error of law. And the reason being because the lender's contract has, the deed of trust has expressed language that is one-sided, that if the lender ever takes any action to determine the validity and extent of its lien, it has a right to recover those fees from the Blenheims. But is it really talking about bankruptcy court? It is. And it's an attorney's fees provision, Your Honor. It expressly covers any actions in bankruptcy court or on appeal. That's not the provision that you're claiming your fees under, is it? But both provisions, Your Honor. You're claiming a statutory right. Well, that's correct. A right on the contract. A right on the contract. And then under Washington's statute, the RCW provides a mutuality of benefit for people like the Blenheims, where a one-sided contract provides for attorney's fees for the lender. Washington has concluded that a prevailing party on an action on the contract should be entitled. If Litton had prevailed on the court to reconsider this or to put this under there, would they have had a right to go after you for fees? Yes, they would have, Your Honor, and they usually do. And you would have had no defense to that? We would not have had a defense to that. And the lenders often add the fees to the back of the loan, and it increases substantially as a result. And these are fees arising out of a Chapter 13 provision? Arising out of a Chapter 13 or any determination in state court or elsewhere about the extent and validity of their lien. And that is exactly what this action was about, and that's where I believe the district court went slightly sideways. Did the bankruptcy court ever rule on this? The bankruptcy court did not rule on it, Your Honor. Just go back to the bankruptcy court. It could go back to the bankruptcy court. The Blendheims didn't actually pursue their fees. They had a cause of action for attorney's fees in their adversary action, but the lender appealed within days of the grant of the summary judgment, and the Blendheims pursued the fees on the basis that the lender appealed. But the bankruptcy court has not yet looked at this?  The bankruptcy court has not yet looked at this. Do you have a claim for attorney's fees pending before the bankruptcy court? We do not, Your Honor. And, in fact, everything was stayed at the bankruptcy court. There is still, you can read in the record, the lender contested any further subsequent orders from the bankruptcy court that had anything to do with this matter. But there's a stay in place? Yes, there is. Who put the stay in place? Lender sought a stay. It was denied by the district court, and I believe the Ninth Circuit granted a stay. Yes. Yes, Your Honor. So, in conclusion, we believe because, and I'm happy to talk about the code provisions, but the court seems very resolved on those issues. We believe that Do SNP provides the authority for a debtor to avoid a lender's lien on the basis that it was disallowed. The debtors gave the lender due process and notice over a period of 18 months on this issue before that order was granted. The Blend Times then committed to a Chapter 13 plan for a period of five years. They paid over $190,000, and they envisioned at the beginning that they'd be paying their first position lien creditor. They cannot have envisioned that the lender was as dilatory as they were through this process. And for that reason, because the Blend Times have done nothing wrong, they've committed to their plan, and the code permits lien avoidance. We ask that you affirm and provide a grant of our fees. Thank you, Your Honors. Okay. Thank you, Counsel. I believe you had about a minute and a half for rebuttal. Thank you, Your Honors. I'll start with the attorney's fees. It's problematic here that Circuit Rule 28-2.5 was not complied with because we don't know what fees were even asked of the district court. We've not been told where in the record the request was made in the district court. I still don't know if the Blend Times want their fees incurred in the adversary proceeding, just on the claim objection, just in the plan confirmation. Just to follow up on Judge Bybee's question, if you had prevailed in the bankruptcy court, you'd be claiming a right to attorney's fees, right? Some of the fees, presumably, yes. But typically, when it's just related to pure bankruptcy issues, I mean, I don't think so. But, yeah. The way that fee provision is written, it contemplates that you'd be asking for fees in bankruptcy court. Well, the litigation that happened in the adversary proceeding was not at all involved with the enforcement provisions of the contract or the lease. That's the Washington statute that's applied here. These fees must be incurred to enforce the provisions of such contract or lease. And it was not involved at all in the litigation. And to put a bow on this, you could resist. You attempted to resist the adversary proceeding, correct? We did. But to put a bow on this is look at the complaint that the Blendtimes filed. Count 1, which sought lien avoidance, specifically did not request attorney's fees. Counts 2 through 9, which were their predatory lending claims, did ask for attorney's fees. So, counsel specifically excised the request. Under a different statutory provision. Under RESPA and TILA and all sorts of other claims. But they recognized there was no right to fees on the 506D Avoidance Act. Well, it's not that they didn't recognize a right. It's that your claim is that they waived it. Waived the right to seek fees? Because they didn't request it in their complaint. Right. They didn't request it in Rule 7008. You have to request attorney's fees. And they didn't request it on this particular account. Why shouldn't we just send this back to the district court and let the district court sort all this out? Well, I mean, you certainly could. But I believe that they waived the right to have that decided on appeal. Well, the bankruptcy court should decide whether they waived it or not. Well, it's. That's fine. That's fine. Yeah, that would be fine. Because the complaint doesn't ask for it. We would say that it wasn't in the complaint. They can't have the fees. At least on that particular issue. And with respect to the bankruptcy matters, no. My final point on Johnson case. BAF CIPA actually did answer Johnson by saying we're going to put in the discharge provisions that are just like 727A8. So. Okay. That's it. Thank you. Thank you very much, counsel. We appreciate your very fine arguments this morning. And interesting case. The matter is submitted. And that ends our session for today.       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Paez, Bybee, Callahan